# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SAMI AL LAITHI (HISHAM SLITI, et al.)** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | Civ. No. 05cv0429 (RJL) |
| | ) | |
| **GEORGE WALKER BUSH, et al.** | ) | |
| | ) | |
| **Respondents.** | ) | |
| _____ | ) | |

**REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DENYING
PETITIONER'S MOTIONS FOR PRELIMINARY INJUNCTION BARRING THE
GOVERNMENT FROM RENDERING HIM TO EGYPT TO FACE PERSECUTION
AND REQUIRING RESPONDENTS TO PROVIDE HIS  COUNSEL WITH A
COMPLETE COPY OF HIS OWN MEDICAL RECORDS AND CEASE THEIR
PRACTICE OF INTENTIONAL MEDICAL MALPRACTICE AGAINST HIM**

Petitioner Sami Al Laithi respectfully files the following Reply in support of his Motion

for Reconsideration of the Court's August 28, 2005 Order denying Petitioner's Motions for

Preliminary Injunction.  The Court should reverse its decision so as to do justice in this case.

## ARGUMENT

1. The Court Should Reconsider Its Order Under Rule 60(b) to Ensure That
 Justice Is Done

Rule 60(b) motions exist to provide the opportunity for the Court to reconsider an order

for "any … reason justifying relief from the operation of the judgment."  FED. R. CIV. P.

60(b)(6).  Indeed, "Rule 60(b)(6) is a 'grand reservoir of equitable power to do justice in a

particular case.' ... [It] 'should be liberally construed when substantial justice will thus be

served.'" <u>Pierce v. Cook & Co.</u>, 518 F.2d 720, 722 (10th Cir. 1975) (en banc) (quoting <u>Radack</u> <u>v. Norwegian Am. Line Agency, Inc.</u>, 318 F.2d 538, 542 (2nd Cir. 1963)).[1]

There is a profound need to prevent manifest injustice here.  As the affidavit of Professor Emile George Howard Joffe, filed with Petitioner's Motion for Reconsideration, makes clear, the United States has a de facto policy of rendering terrorism suspects to foreign governments where they are knowingly tortured.  No pledge to avoid torture has helped these men.  It sure cannot be trusted to help Mr. Al Laithi.

The affidavit and Petitioner's other filings clearly show that Respondents' proffered declarations from Mr. Waxman and Mr. Prosper simply do not correlate with the truth.  To borrow the Court's word, they are "disingenuous."  <u>See</u> Memorandum Opinion and Order of August 28, 2005 at 3.  The Joffe affidavit provides the direct evidence the Court has sought.  The Court must revisit the matter and do justice.

Contrary to Respondents' claims, the reports of U.S. complicity in renditions and torture are not "thirdhand" or "unsubstantiated."  These are the sources: the United Nations Committee Against Torture, former FBI agents, the Italian Government and Human Rights Watch.  All are very reputable sources.  Petitioner admits the reports are sensationalistic, but only because the full horror of Respondents' actions is so repugnant as to shock the conscience, not because the reports are in any way trumped up.  The truth is graphic enough.  Therefore, given the powerful

---

[1] Rule 60(b)(1) is also implicated.  Petitioner's failure to properly file his reply brief is the type of mistake, inadvertence or excusable neglect Rule 60(b)(1) is meant to cover.  <u>See, e.g.</u>, <u>Webster v. Pacesetter</u>, 270 F.Supp. 9, 12 (D.D.C. 2003) ("[T]he Supreme Court considers excusable neglect an 'elastic concept' that encompasses 'situations in which the failure to comply with a filing deadline is attributable to negligence.' [Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd., 507 U.S. 380, 39]4[, 113 S.Ct. 1489 (1993)].  A determination of whether neglect is 'excusable' is 'at bottom an equitable one, taking account of all relevant circumstances.' <u>Id.</u> at 395.  In <u>Pioneer,</u> the Supreme Court announced four factors to be considered in making this determination: (1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on the proceedings; (3) the reason for the delay and whether the delay was within the reasonable control of the moving party; and (4) whether the late party acted in good faith.  <u>Id.</u> at 395.").  All the <u>Pioneer</u> factors warrant relief here.  The Court simply did not have all the facts before it when it ruled on Petitioner's motions.  It does now and should reconsider its decision.

evidence in the Joffe affidavit that – at a minimum – Respondents have chosen to ignore their policy of avoiding rendition to nations where the transferee would be tortured, this Court should reconsider its order.[2]

Perhaps reconsideration would be an extraordinary step, but nothing about this case is ordinary.  The abuse Mr. Al Laithi has suffered, the fact that he has been held for over three and a half years based on a false accusation, including over 4 months since being found innocent, the fact that the United States plans to send him to his home country, as they have every single detainee released from Guantanamo, despite Egypt's direct threats to Mr. Al Laithi and its repulsive human rights record – all the facts are astonishing.  This Court should not sidestep doing what is necessary because it is not typical.  "The provisions of Rule 60(b) must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments and the 'incessant command of the court's conscience that justice be done in light of *all* the facts.'" Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984) (quoting Bankers Mortgage Co. v. United States, 423 F.2d 73, 77 (5th Cir. 1970) (emphasis in original)).  This Court should not permit the United States Government to continue using pious language in public denouncing torture, while privately subverting all this country stands for.

2.      The Cases Before the D.C. Circuit Will Not Determine The Claims at Issue Here

Respondents claim that the current appeal before the D.C. Circuit in Al Odah v. United States, Case Nos. 05-5064, 05-5095 through 05-5116 (argued September 8, 2005), will determine whether Petitioner has legal grounds for relief.  Not so.  In his Motion for Preliminary

---

[2] Petitioner does not agree with Respondents that permission is required to enter the Joffe affidavit into the record. The affidavit was not filed as an attempt to provide a supplemental affidavit to the Motion for Preliminary Injunction, but rather was filed to demonstrate the need for the Court to reconsider its decision under Rule 60(b)(6) and do justice.  However, if the Court construes the affidavit as supplemental, Petitioner hereby requests permission for it to be considered part of the record.  No matter how the Court rules on this motion, an appeal is certain. Inclusion of the Joffe affidavit is essential to ensure that the record will be complete for any such appeal.

Injunction regarding medical records, Petitioner relied on the Fourth, Fifth, Eighth and Fourteenth amendments, 42 U.S.C. § 1981 and various international agreements.  In his Motion for Preliminary Injunction, Petitioner relied on the Convention Relating to the Status of Refugees, the Protocol Relating to the Status of Refugees, the United Nations Convention Against Torture, the Foreign Affairs Reform and Restructuring Act of 1998 and its implementing regulations, the Convention between the United States and the Ottoman Empire Relating to Extradition, and the All Writs Act.  If the Circuit Court responds to Respondents' Statement of Issues, not one of these will be addressed, with the exception of the Fifth Amendment's right to Due Process.  See Opening Brief for the United States, et al., Al Odah (filed April 27, 2005), at 2 ("Statement of Issues … 1. Whether the Due Process Clause of the Fifth Amendment applies to aliens captured abroad and held at Guantanamo Bay, Cuba.  2. If so, whether such aliens may be detained as enemy combatants based on formal adjudications conducted by Combatant Status Review Tribunals.  3. Whether the Third Geneva Convention is judicially enforceable at the behest of individual aliens.  4. If so, whether the President permissibly determined that members of the Taliban do not qualify for prisoner-of-war status under the Convention.  5. Whether the President is a proper respondent in these cases.").

Further, every single detainee litigating that appeal has been found to be an enemy combatant.  See Brief for the Guantanamo Detainees, Al Odah (filed May 27, 2005).  Mr. Al Laithi is innocent.  He must be judged by that standard.[3]

---

[3] Respondents appear unable to get their rhetoric straight about whether Mr. Al Laithi is "not an enemy combatant" or "no longer an enemy combatant."  Compare Opposition to Motion for Reconsideration at 7 (referring to Petitioner's "purported classification as being 'no longer an enemy combatant'") with Opening Brief for the United States, et al., Al Odah (filed April 27, 2005), at 5-6 (stating "Out of 558 CSRTs, 38 have resulted in determinations that detainees are not enemy combatants;" citing Combatant Status Review Tribunal Summary, available at http://www.defenselink.mil/news/Mar2005/d20050329csrt.pdf, listing prisoners as "enemy combatant" or "non-enemy combatant").  As ridiculous as Respondents' failure to admit Mr. Al Laithi has been found not to be an enemy combatant is, it is topped by their absurd public relations-minded, semantic tap-dance regarding the status of Mr. Al Laithi and his 37 non-enemy combatant compatriots.  Each of these men was found not to be "an individual

3.	The Court Should Announce Its Decision Regarding Whether Respondents Can Continue to Hold Mr. Al Laithi at Camp V Despite His Innocence

Despite Respondents' claims to the contrary, the Court did not decide whether Mr. Al Laithi should remain in the brutal conditions at Camp V.  Respondents have offered no justification for his continued confinement in Camp V, particularly given their transfer of other non-enemy combatants to Camp Iguana.  See Hearing Transcript, Qassim v. Bush, No. 05-CV-0497 (JR) (August 25, 2005), at 9:3-10:14 (Respondents' counsel states that 10 Uighur detainees, all of whom were found not to be enemy combatants, had been moved to Camp Iguana, a much less punitive setting).  Mr. Al Laithi's disability, a disability caused by a vicious beating by Respondents' personnel, certainly does not justify incarceration in conditions worse than any Death Row.  See, e.g., Armstrong v. Davis, 275 F.3d 849, 874 (9th Cir. 2001) (finding prison authorities had violated rights of people with disabilities when only proffered reasons for failure to accommodate prisoners and parolees were vague comments about cost and administrative concerns; noting defendants "did not suggest that the unspecified costs and administrative concerns were any greater than those of any other agency subject to the ADA, or offer any reason why it should be exempted from the ordinary costs and burdens of complying with the ADA").  It is time for Mr. Al Laithi to be treated humanely.  Please remove him from Camp V.

---

who *was* part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners.  This includes any person who *has committed* a belligerent act or *has directly supported* hostilities in aid of enemy armed forces."  Deputy Secretary of Defense Paul Wolfowitz, Memorandum for the Secretary of the Navy re: Order Establishing Combatant Status Review Tribunal (July 7, 2004), available at http://www.defenselink.mil/news/Jul2004/d20040707review.pdf (emphasis added).  Respondents' definition of "enemy combatant" looks entirely to past events.  It makes no sense therefore to find someone once was but is no longer an enemy combatant.  Either someone was part of or supported the Taliban or al Qaeda, or committed acts against the U.S. and its allies in the past, or he did not.  Respondents do not want to admit their mistakes, that they've deprived innocent men of their liberty for years.  So, they resort to word-play.  The current attempt to cast cleared prisoners as "no longer enemy combatants," implying they once were, is disingenuous and dangerously close to slander.

## CONCLUSION

Now that all the facts are before the Court, facts that demonstrate that Respondents have repeatedly sent prisoners to be tortured, facts that directly refute the declarations of Mr. Waxman and Mr. Prosper, facts that show that Mr. Al Laithi faces imminent, irreparable harm, facts that make clear that the D.C. Circuit cases are focused on issues much narrower than those of concern here, this Court should reconsider its August 28, 2005 order and grant Mr. Al Laithi's Motions for Preliminary Injunction.

Dated: September 26, 2005                    Respectfully submitted,


_____/s/_____
James W. Beane Jr.
U.S. District Court for the
District of Columbia, Bar No. 444920
803 Florida Avenue, N.W.
Washington, D.C. 20001
(202) 257-3920 (tel)
(703) 354-3456 (fax)
e-mail: beane.law@verizon.net

Clive A. Stafford Smith
Admitted *pro hac vice*
636 Baronne Street
New Orleans, La. 70113
(504) 558 9867
e-mail: clivess@mac.com

*Counsel for Mr. Al Laithi*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this pleading, this day, by e-mail, upon Andrew Warden, counsel for Respondents.

Done this 26th day of September, 2005.

_____/s/_____
James W. Beane, Jr.