```
                     UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA


YOUSUF AL KARANY,                 :  Docket No. CV05-429 (RJL)
                                  :
            Petitioner,           :  December 17, 2008
                                  :
                                  :  11:45 a.m.
v.                                :
                                  :
GEORGE W. BUSH, ET AL.,           :
                                  :
                                  :
            Respondents.          :
. . . . . . . . . . . . . . . . . :


                 TRANSCRIPT OF OPEN HABEAS HEARING
              BEFORE THE HONORABLE RICHARD J. LEON
                   UNITED STATES DISTRICT JUDGE




APPEARANCES:

For the Petitioner:        CLIVE A. STAFFORD SMITH, ESQ.
                           636 Baronne Street
                           New Orleans, Louisiana  70113

                           ZACHARY KATZNELSON, ESQ.
                           CORI CRIDER, ESQ.
                           Reprieve
                           22 Tudor Street
                           London, UK   EC4Y 0AY


For the Respondents:       JAMES ROSS SMART, ESQ.
                           ERIK ABLIN, ESQ.
                           PHILLIP MICHAEL TRUMAN, ESQ.
                           NICHOLAS OLDHAM, ESQ.
                           U.S. Department of Justice
                           20 Massachusetts Avenue, N.W.
                           Washington, D.C.   20530
```

PDF created with pdfFactory trial version www.pdffactory.com

```
Court Reporter:              PATTY ARTRIP GELS, RMR
                             Official Court Reporter
                             Room 4700-A U.S. Courthouse
                             Washington, D.C.  20001
                             (202) 962-0200
```

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

PDF created with pdfFactory trial version www.pdffactory.com

|   |   |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | COURTROOM DEPUTY: Calling civil case 05-429, Yousuf Al |
| 3 | Karany versus George W. Bush, et al. |
| 4 | Would counsel please come forward and identify yourself |
| 5 | for the record. |
| 6 | MR. STAFFORD SMITH: Good morning, your Honor. I am |
| 7 | Clive Stafford Smith on behalf of Mr. Al Karany, along with |
| 8 | Zachary Katznelson and Cori Crider. |
| 9 | THE COURT: Welcome. |
| 10 | MR. SMART: Good morning, your Honor. James Smart from |
| 11 | the Department of Justice. And with me at counsel table is Erik |
| 12 | Ablin, Nicholas Oldham and Mike Truman. Also on litigation |
| 13 | support is Tom Coucher. |
| 14 | THE COURT: Very good. Welcome back. All right. I |
| 15 | believe the necessary connections have been made by telephone to |
| 16 | Guantanamo, and our detainee in this specific instance is |
| 17 | listening in. |
| 18 | First of all, welcome, everyone. This is the beginning |
| 19 | of the hearing that got rolling, so to speak, when the |
| 20 | classified factual return was filed on October 21st, 2008, by |
| 21 | the Government in this case. An in-chambers conference was held |
| 22 | on October 24 with counsel to discuss whatever issues they |
| 23 | thought might need to be resolved by the Court. An unclassified |
| 24 | version of the return was filed on November 6th, 2008, by the |
| 25 | Government. And on November 25th, 2008, the detainee's counsel |

PDF created with pdfFactory trial version www.pdffactory.com

1  filed a request for discovery in a discovery Motion, making 62
2  different requests for discovery of the Court.
3        The Court held a hearing on Monday, December 1st to
4  resolve those issues, and the initial traverse covering the
5  factual allegations and disputes between the parties was filed
6  on Friday, December 5th, 2008.  A number of status conferences
7  were held in the days after that between the Court and the
8  parties, and the traverse was supplemented on December 12th,
9  2008, the same day the Court held a pre-hearing conference for
10 this hearing here today.
11       I would be remiss if I did not acknowledge and thank
12 the parties for their hard work under relatively short deadlines
13 that were set because of this Court's belief and commitment that
14 these hearings, to be true to the Supreme Court's ruling, were
15 to be held as soon as possible and, in my judgment, that
16 included prior to the completion of this administration.
17       So to get these hearings and the hearings of the other
18 detainees assigned to me done, these are the timetables that the
19 Court believes were necessary.  And I might add, based on the
20 quality of the pleadings and the documents that have been filed,
21 which I have had the pleasure of reviewing, the parties have
22 done an exhaustive job on behalf of their respective sides.  So
23 I compliment them for that at this time.
24       So what we are going to do now, of course, is hear the
25 unclassified opening arguments for both sides.  We estimate

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   those will be around 15 minutes each because, of course, the
 2   parties are not at liberty to discuss the evidence in the case
 3   which is -- essentially is all classified information.
 4           Then we will go into executive session to go over the
 5   classified evidence in the case, and the Government, of course,
 6   has the burden of proof and will be presenting its case.  And
 7   detainee's counsel, as they go along, will be presenting their
 8   opposition to any factual issues that are material that are in
 9   dispute in the case.
10           When that is over, we will have closing arguments from
11   both sides.  Unfortunately, because the closing arguments will
12   essentially be made up of discussion of classified information,
13   those too will have to be in a closed session.  The Court
14   expects to announce its decision within two weeks, either the
15   29th or the 30th of this month.
16           So it's the Court's belief that since the Petitioner is
17   the moving party, the Petitioner goes first as to this opening,
18   and then, when we get to the classified, since the burden of
19   proof is on the Government, they go first in that opening.  So
20   we will hear from the Petitioner first.
21           THE SERGEANT:  Excuse me, your Honor.
22           THE COURT:  Hello.
23           COURTROOM DEPUTY:  Sergeant, what is it?
24           THE SERGEANT:  This is Guantanamo.  We can't hear you.
25   It is coming in garbled.  And we don't hear an interpreter.
```

PDF created with pdfFactory trial version www.pdffactory.com

Case 1:05-cv-00429-RJL   Document 178   Filed 12/18/08   Page 6 of 19

6

```
 1              THE COURT:  So you didn't hear anything I said, sir?
 2              THE SERGEANT:  It is coming in broken up, and we don't
 3   hear an interpretation for the detainee.
 4              THE COURT:  Well, the reason why there isn't an
 5   interpreter for the detainee, of course, is because he speaks
 6   sufficiently good English, in the judgment of his counsel, that
 7   it wasn't necessary to have an interpreter either here or down
 8   in Guantanamo.  So at this point it seems to me -- we have a
 9   transcript of my introductory remarks which were obviously brief
10   and factual in nature --
11              THE SERGEANT:  That's fine.  One of his attorneys is
12   here, and he says that's fine.
13              THE COURT:  Okay.  So we will arrange for him to have a
14   transcript of my opening remarks, but I would ask the Sergeant,
15   if you are having trouble hearing counsel who are about to
16   speak, I want you to let us know immediately.  Speak up, and we
17   will take the necessary steps to make sure that this
18   transmission is working appropriately under the circumstances.
19   Okay?
20              THE SERGEANT:  Yes, sir. You are coming in broken up,
21   but we heard most of what you said, yes, sir.
22              THE COURT:  All right.  I guess he heard most of what I
23   said, but I want him to be able to hear all of what his counsel
24   says and I want him to hear all of what the Government says.  So
25   if this starts breaking up to the point where he can't hear it
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    or understand it, I want you to let us know immediately.  Okay?
 2              THE SERGEANT:  Yes, sir.
 3              THE COURT:  Thank you.
 4              THE SERGEANT:  We can hear the attorney, but we can't
 5    hear you.  You are coming in broken up.
 6              THE COURT:  Well, I will tell you what.  We are going
 7    to start with detainee's counsel right now and we will see how
 8    that goes.
 9              THE SERGEANT:  Yes, sir.
10              MR. STAFFORD SMITH:  Thank you, your Honor.  May it
11    please the Court.  I'm Clive Stafford Smith.  It is a great
12    privilege to be here today.  I do apologize for not being here
13    before.  My wife has been very sick.
14              THE COURT:  I understand completely.
15              MR. STAFFORD SMITH:  But she ordered me to come today,
16    so there you have it.
17              And I view it as a very good sign, your Honor, that you
18    are wearing a tie in the colors of the English cricket team.  I
19    sincerely hope that that --
20              THE COURT:  I also would note that's fortuitous.
21              MR. STAFFORD SMITH:  Well, that's one of my great
22    sports.  Perhaps we will go up and have a quick game later.
23              I will be very brief, your Honor.  Let me just start
24    have off with, I think, a crucial issue, which is, who is
25    Mohammed Al Karany?  It has been my privilege to represent him
```

PDF created with pdfFactory trial version www.pdffactory.com

1    now for three years.  And this is a kid -- and he is a kid who
2    had the misfortune to grow up African in Saudi Arabia.  And I
3    have spent most of my career litigating in the deep south, and I
4    have got to say we, as Americans, have made tremendous strides
5    that haven't been made in Saudi Arabia in race relations.  And I
6    think that explains an awful lot of what we are going to discuss
7    over the next day.
8             You know, on one level, in this unclassified
9    introduction, we don't need to go any further than this.  This
10   was the 2008 ARB that was filed by our Respondent in this case.
11   And a conscientious member of the military down there in
12   Guantanamo added three things at the end of it.  Those three
13   things -- and these were Exhibit 16D -- said as following.
14   Quote:  It was reported that the information about the detainee
15   receiving special training at Al Farouq was not true.
16            Remember, these all come from people other than Mr. Al
17   Karany.
18            Second, quote, it was reported that the detainee is of
19   no value to the United States and does not know anything, end
20   quote.
21            A third person:  It was reported that the detainee has
22   nothing -- was nothing in al-Qaeda.  It was reported the
23   detainee lied about his background because the detainee was
24   afraid that, if he returned to Saudi Arabia, he would go to jail
25   there.  It was reported the detainee was afraid of his family's

PDF created with pdfFactory trial version www.pdffactory.com

1     neighbors and of causing problem for his family in Saudi Arabia.
2              There, in a nutshell, you have an awful lot of what's
3     really going on here, and I sincerely hope and believe that we
4     will hear from Respondent as to who said those things because we
5     have only had one of those identified to us to date, and it
6     would obviously be crucial, in any system that believes in
7     fairness, for the Court to be told where those other sources
8     are, who they are and why those people said it and why,
9     particularly, Respondent felt it important to include that in
10    the official ARB down there in Guantanamo.
11             Another aspect of this case, which is crucial, is
12    Mr. Al Karany's status as a juvenile.  So many things flow from
13    that.  And, you know -- and one thing -- the thing that struck
14    me about this case ever since I first got involved is in terms
15    of assessing the case against Mr. Al Karany, it truly is quite
16    astounding that, after six-and-a-half years of holding him in
17    Guantanamo Bay, Respondent didn't know how old he was.  I mean,
18    that's quite a commentary on the evidence that's been put
19    together down there.
20             Now we do know, and we've presented to the Government
21    and yourself the various evidence on that, and I will point out
22    in the unclassified materials that every single time there has
23    been an annotation of what Mr. Al Karany has said his birthday
24    was -- and there's three occasions -- every single time he has
25    told the Government the same thing, which is the 12th month of

PDF created with pdfFactory trial version www.pdffactory.com

1   1407, which translates, of course, to making him 14 at the time
2   that he was taken prisoner in Pakistan, not in Afghanistan.
3            And there are many conclusions that flow from that,
4   conclusions that I think perhaps everyone would rather avoid
5   having to get to, which is the thorny issue of what would happen
6   if someone really was an enemy combatant that was 14?  And I put
7   it in this perspective -- this struck me, too, and I just
8   thought it was interesting.  You know, Pope Benedict XVI was in
9   the Hitler Youth when he was 15 years old.  And I don't think
10  there is anyone on this planet who is saying that one should
11  hold Pope Benedict XVI for what happened when he was 15.  And
12  you couldn't do that under international law or American law.
13           Now, of course, Mr. Al Karany wasn't in any Hitler
14  Youth, and he wasn't a member of al-Qaeda, but even if one
15  accepted the Government's case at face value and gave it credit
16  across the board, you would be faced with a situation like that.
17  And that would then raise all of these very thorny issues.
18           Fortunately, you are going to be saved from that
19  because we are not going to have to deal with whether he was a
20  juvenile enemy combatant because he wasn't an enemy combatant at
21  all.
22           What really happened?  We have laid it out, and I won't
23  bore the Court with going through what really happened, but
24  Mr. Al Karany left Saudi Arabia to learn English and to learn
25  computers.  And I think that, ultimately, the Court will

PDF created with pdfFactory trial version www.pdffactory.com

1  recognize that that was what it was all about.
2           One other element that I will touch on -- I won't go
3  into in any detail -- is the thorny issue, again, of the abuse
4  that Mr. Al Karany has gone through.
5           You know, there is a fascinating argument made by
6  Respondent that the Manchester document from Manchester over
7  near where I live, means that if anyone claims they have been
8  abused, that's proof they are in al-Qaeda.
9           In this particular case, we have an FBI investigation
10 that concluded he has been abused.  It was my privilege to be
11 there for that investigation in Guantanamo where these FBI
12 agents came and interviewed my client -- this is all
13 unclassified -- and it's now part of an FBI report where the
14 Government concluded that Mr. Al Karany had been sleep deprived,
15 had been put through the frequent flyer program, that he had
16 been put in shackles and short-shackled, left there until he
17 urinated on himself, and that he had been subjected to various
18 coercive interrogation methods.  This comes from the FBI, not
19 from my client, but it proves that my client is telling the
20 truth.
21          Again, that raises very thorny questions that, again, I
22 don't think the Court will have to reach about burdens of proof
23 on voluntariness of statements.  But, actually, again, we can
24 skirt that because of the real evidence.  And the real evidence
25 here -- I have tried a lot of cases in Mississippi, and I don't

PDF created with pdfFactory trial version www.pdffactory.com

1   think it would get very far in any court down there.  Trial by
2   newspaper would be a slightly generous approach to describing
3   some of the evidence because, as you know, the Government has
4   submitted two newspaper articles from al-Quds and al-Sharq that
5   they believe prove something.
6          Well, it was difficult for us to trace down a lot of
7   the evidence here because, as the Court says, it has been a
8   short time and an awful lot of ground to cover.  But as luck
9   would have it, those newspapers were published in London, and
10  that made our job a little bit easier.  And the Court will have
11  seen our exhibits of an affidavit from the chap who published
12  the al-Sharq story on which the Government relies.  And he says
13  that he is horrified -- it makes me feel bad that someone might
14  be using it against Mr. Al Karany in this way because he didn't
15  mention anything about Mr. Al Karany in that article.  He had no
16  idea about who Mr. Al Karany was.
17         Now, interestingly enough, he told us that he did
18  indeed later learn who Mr. Al Karany was, and he published an
19  article in Arabic about Mr. Al Karany himself.  And he describes
20  it in this affidavit.  And it's exactly consistent with
21  everything that Mr. Al Karany has laid out as his case before
22  this Court.
23         So the Government, which would have this Court rely on
24  a newspaper article in Arabic written 3,000 miles away from what
25  was going on, actually should -- has pointed us to some evidence

PDF created with pdfFactory trial version www.pdffactory.com

1   that shows that Mr. Al Karany was telling the truth.
2          In summary -- and I, you know, will keep this very
3   short -- we have to think about the balance of equities when we
4   consider this evidence, and we have to think about a child, a
5   juvenile, who the Government would like to hold in perpetuity,
6   effectively, in Guantanamo Bay.  That's one side of it.
7          And the other side is this individual who has one life
8   who -- should have been in school for the last six years, not in
9   Guantanamo Bay.  And I think that puts in good perspective the
10  way we consider the evidence over the next few hours.  And I
11  have said enough briefly.
12         Thank you very much, your Honor.
13         THE COURT:  Thank you, Mr. Smith.
14         Mr. Smart.
15         MR. SMART:  Thank you, your Honor.  May it please the
16  Court, I will also be brief.  The Court, your Honor, is here
17  today because in the months leading up to and following
18  September 11th, 2001, Petitioner pursued militant Jihad with
19  al-Qaeda.  That path extended from Petitioner's obtaining a
20  false passport to conceal his identity as he traveled the world
21  on his Jihadi path, through deepening ties to and support of
22  al-Qaeda, including attendance at an al-Qaeda training camp in
23  Afghanistan and participation in the hostilities at Tora Bora.
24         Fortunately, United States forces were able to detain
25  the Petitioner, negating his threat to U.S. and allied forces

PDF created with pdfFactory trial version www.pdffactory.com

1   and civilians.

2   The terrible morning of September 11th, 2001, brought
3   the single worst attack on American soil.  September 11th
4   plunged the United States into a full-fledged war against
5   terror.  We were required to take the offensive to protect the
6   lives of our citizens, our democratic values and our way of
7   life.

8   Although September 11th brought home the threat posed
9   by al-Qaeda to millions of Americans who knew little or nothing
10  about it until that time, that threat had, in fact, arisen years
11  before.  The terrorist organization had been founded by Osama
12  bin Laden in the late 1980s.  In 1996, Osama bin Laden issued a
13  public declaration of war against the United States calling for
14  the murder of American military personnel serving on the Arabian
15  peninsula.  And in February 1998 bin Laden issued a fatwa, or a
16  purported religious ruling, calling for all Muslims able to do
17  so to kill Americans, whether military or civilian, whenever and
18  wherever possible.  His followers took up that calling well
19  before September 11th, repeatedly attacking American interests
20  throughout the world.

21  The United States Government and its citizens decided
22  swiftly and decisively after the September 11th attack.  The
23  response necessarily has two central goals:  First, the
24  prevention of, not just reaction to, future terrorist attacks;
25  second, the eradication of terrorists and those that harbor

PDF created with pdfFactory trial version www.pdffactory.com

1  them.  This is exactly what Congress authorized and directed the
2  President to do on September 18, 2001, when it passed the
3  authorization to use military force.  By necessity, that
4  authorization included the authority to detain the enemy
5  wherever they are found while hostilities continue.
6           Our enemy is unlike the organized enemies that the --
7  and armies that the United States has primarily faced in its
8  history.  The enemy recruits networks of combatants who wear no
9  uniforms, carry no identity cards.  They are trained to -- not
10 only to master military skills and the tools of terror, but also
11 to exercise good trade craft to conceal their true identities
12 and motives.
13          These enemy combatants traveled from country to country
14 with ease, often under false travel documents, and they utilize
15 well-rehearsed cover stories to blend into communities wherever
16 they exist and to hide their true activities if they are
17 captured.
18          The Petitioner in this case claims that his
19 international travels were simply in pursuit of educational and
20 vocational advancement.  Petitioner asserts improbably that
21 despite admittedly obtaining a passport under a false name with
22 a date of birth that reflected majority status, he was allegedly
23 approximately 14 years old at the time he was detained.  He
24 makes sensationalistic claims regarding his treatment while in
25 detention, and he speculates that he was detained for no reason

PDF created with pdfFactory trial version www.pdffactory.com

1   other than the incentive on the part of his Pakistani captors to
2   obtain a bounty.  As these proceedings will show, however, these
3   claims are unsubstantiated.
4          Moreover, they have no bearing on whether the
5   Petitioner is an enemy combatant against the United States.
6   Under the law, it will be appropriate to hold the Petitioner as
7   an enemy combatant even if he were a juvenile which, I repeat,
8   these proceedings will show there is no basis to conclude that
9   he was a juvenile.
10         His sensationalistic claims regarding his treatment
11  while in detention have no bearing on the question before this
12  Court as to whether he, based on the evidence put forth before
13  the Court, was an enemy combatant.  And the question of the
14  incentive on the part of his Pakistani captors is not materially
15  before this Court because there is no probable cause
16  determination in this proceeding.  This is not a criminal case.
17         The Court must not be distracted by what is immaterial.
18  What matters is that the United States has multiple sources of
19  reliable information, credible intelligence, that Petitioner,
20  far from seeking innocent educational opportunities and
21  vocational advancement, instead pursued terrorist training and
22  was a foot soldier in the forces of al-Qaeda.  The United States
23  was, therefore, certainly entitled to detain the Petitioner on a
24  nonpunitive basis and to remove his threat for the duration of
25  hostilities.

PDF created with pdfFactory trial version www.pdffactory.com

```
 1              My discussion now is on the public record.  And the
 2    evidence in this case, as your Honor has mentioned, is primarily
 3    classified.  As a result, I cannot talk further about the
 4    evidence here.
 5              I close, then, by simply and respectfully submitting
 6    that the evidence in this matter establishes beyond a
 7    preponderance that the Petitioner attended an al-Qaeda training
 8    camp, participated in hostilities at Tora Bora, and was
 9    otherwise a part of or a supporter of al-Qaeda, committed
10    belligerent acts, and directly supported hostilities in aid of
11    enemy forces.  Therefore, under the standards established by
12    this Court, the Petitioner is lawfully detained as an enemy
13    combatant by the United States.
14              THE COURT:  Thank you, Mr. Smart.
15              All right.  We are going to take a brief recess to
16    secure the room so that we can proceed with the classified
17    components of this hearing.  Based on yesterday's experience
18    with the other case, we will probably use up the remainder of
19    the day, and maybe even into the early evening -- I think we
20    went until 8:15 last night -- and then tomorrow morning we will
21    do the closing arguments in this case.  And then we will start
22    the next case sometime tomorrow morning, late in the day.
23              So the next time we will have a public hearing,
24    probably, regarding this case will be in around two weeks when I
25    announce my decision.  So we will take a brief recess to get the
```

PDF created with pdfFactory trial version www.pdffactory.com

1   room set up and to close off our telephone call with Guantanamo.
2   We will stand in recess.
3
4            (Recess.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

PDF created with pdfFactory trial version www.pdffactory.com

1                    CERTIFICATE OF REPORTER
2
3
4        I, Patty A. Gels, certify that the foregoing is a
5   correct transcript from the record of proceedings in the
6   above-entitled matter.
7
8
9
10                               _____
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

PDF created with pdfFactory trial version www.pdffactory.com