**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HISHAM SLITI, | ) |
| | ) |
|         Petitioner, | ) |
| | ) |
| v. | )  Civil Case No. 05-429 (RJL) |
| | ) |
| GEORGE W. BUSH, *et al.*, | ) |
| | ) |
|         Respondents. | ) |

**MEMORANDUM ORDER**
(December 30, 2008)

Petitioner Hisham Sliti ("petitioner" or "Sliti") is a detainee being held at the U.S. Naval Base at Guantanamo Bay, Cuba. He alleges that he is being unlawfully detained by Respondents President George W. Bush, Secretary of Defense Robert M. Gates,[1] Army Brigade General Jay Hood, and Army Colonel Nelson J. Cannon (collectively "respondents" or the "Government"). On December 18, 2008, the Court commenced habeas corpus hearings for petitioner Sliti. That morning, counsel for both parties made unclassified opening statements in a public hearing. Petitioner Sliti voluntarily waived his opportunity to listen to those opening statements via a telephone transmission to Guantanamo Bay, Cuba.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to an action in his official capacity ceases to hold office, the court will automatically substitute that officer's successor. Accordingly, the Court substitutes Robert M. Gates for Donald H. Rumsfeld.

Thereafter, the Court went into a closed door session to hear each side present opening statements that included certain relevant classified information. Upon completion of those statements, each side presented its evidence and arguments regarding a series of material issues of fact in dispute between the parties. That presentation was completed in the early evening of December 18, 2008. Petitioner Sliti, thereafter, voluntarily chose not to testify on his own behalf. The next morning, the Court reconvened to hear closing arguments from the parties. At the end of those arguments, the Court informed the parties that it would hold a public hearing today to announce its decision. A classified version of this opinion setting forth in greater detail the Court's reasoning will be distributed next week through the Court Security Office, together with the final judgment.

Before stating the Court's ruling, however, a brief statement of the relevant factual and procedural history is appropriate.

## BACKGROUND

Petitioner Sliti, a native of Tunisia, is alleged to have traveled sometime in mid-2000 from London to Afghanistan on a false passport. (Unclassified Opening at 11:21-25, 14:8-13.) Once in Afghanistan, he lived in a Tunisian guesthouse and a mosque. (Unclassified Return, ¶¶ 33, 65.) In October 2000, he returned to Pakistan and attempted to take a return flight to Europe. (Unclassified Opening at 9:4-8; Unclassified Return, ¶ 64.) He was detained by the Pakistani authorities because of his false passport, and he was allegedly carrying an address book bearing contact information for certain radical

extremists. Petitioner Sliti escaped from the Pakistani authorities and returned to Afghanistan, (Unclassified Return, ¶ 64), where he remained until late 2001, when he was picked up by Pakistani authorities while fleeing from Afghanistan. (Unclassified Return, ¶ 73.) He was transferred from Pakistani to U.S. custody and was transferred thereafter from Kandahar, Afghanistan to Guantanamo Bay, Cuba, where he has remained since his arrival.

In the aftermath of the Supreme Court's decision in *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (holding that 28 U.S.C. § 2241 extended statutory habeas jurisdiction to Guantanamo), petitioner Sliti filed his habeas corpus petition with the Court on March 2, 2005. (Pet. for Writs of Habeas Corpus [Dkt. #1].) As with the hundreds of other petitions filed around that time, no action was taken by this Court on that petition until the Supreme Court finally ruled on June 12, 2008 in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), that such detainees are "entitled to the privilege of habeas corpus to challenge the legality of their detention." *Id.* at 2262.

In the month that followed the *Boumediene* decision, this Court met with counsel in Sliti's case on two occasions to discuss issues unique to the case and procedural issues attendant to the habeas process. On July 30, 2008, this Court ordered the respondents to file their Factual Return by September 23, 2008. (Briefing and Scheduling Order, July 30, 2008 [Dkt. #88].)

On September 9, 2008, respondents sought a thirty-day stay extension for the production of the Factual Return. (Mot. for Partial Relief [Dkt. #114].) The Court

granted respondents' motion on September 23, 2008 and set October 21 as the new due date for the Factual Return. (Order, Sept. 23, 2008 [Dkt. #116].) Respondents complied with that order.

On October 24, 2008, the Court met with counsel in chambers to discuss any issues raised after reviewing the Factual Return. On October 31, 2008, the Court issued its Case Management Order ("CMO") for the case. (CMO [Dkt. #134].) That order was essentially identical to the CMO previously issued by the Court in *Boumediene v. Bush*, No. 04-cv-1166, on August 27, 2008.

On November 6, 2008, the Government filed an unclassified version of its Factual Return. (Notice of Filing of Unclassified Return [Dkt. #143].) Twenty days later, petitioner's counsel filed a motion for leave to take discovery with more than twenty-five discovery requests. (Notice of Filing of Motion for Leave to Take Discovery [Dkt. #150].) A discovery hearing was held on December 1, 2008, and the Court granted one of petitioner's requests.

On December 5, 2008, petitioner's counsel filed their initial Traverse setting forth the factual basis for its opposition to the Government's return. (Notice of Filing of Petitioner's Preliminary Traverse and Second Discovery Motion [Dkt. #169].) On December 8, 2008, petitioner's counsel filed a second discovery motion seeking leave to depose twenty-five individuals and the production of five documents. *Id.* On December 10, 2008, a hearing was held. Two days later, petitioner Sliti supplemented his Traverse. A pre-hearing conference was held with counsel the same day in order to create a list of

the material issues of fact in dispute between the parties. On December 16, 2008, petitioner Sliti filed a second supplement to his Traverse based on certain discovery materials. (Notice of Filing of Petitioner's Traverse Supplements [Dkt. #177].)

Based on a careful review of the Factual Return and the Traverse, and after a day and a half of hearings on the factual issues in dispute and the oral arguments of the parties, the following is the Court's ruling on petitioner Sliti's petition.

## LEGAL STANDARD

Under the CMO, the Government bears the burden of proving "by a preponderance of the evidence, the lawfulness of the petitioner's detention." (CMO, ¶ II.A.) The Government argues that petitioner is lawfully detained because he is an "enemy combatant," who can be held pursuant to the Authorization for Use of Military Force and the President's powers as Commander in Chief.[2] (Notice of Filing of Enemy Combatant Statement [Dkt. #165].) The following definition of "enemy combatant," previously adopted by this Court in the *Boumediene* cases, governs the proceedings in this case:

> An "enemy combatant" is an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces

---

[2] In response to the September 11th terrorist attacks, Congress passed a joint resolution authorizing the President to:

[U]se all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons.

Authorization for Use of Military Force, Pub. L. No. 107-40, §§ 1-2, 115 Stat. 224 (Sept. 18, 2001).

>that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces.

*Boumediene v. Bush*, 2008 WL 4722127, at *2 (D.D.C. Oct. 27, 2008). Accordingly, the question before this Court is whether the Government has shown by a preponderance of the evidence that petitioner Sliti is being lawfully detained—*i.e.*, that he is an "enemy combatant" under the definition adopted by this Court.

## ANALYSIS

The Government contends that petitioner Sliti is an enemy combatant under the definition adopted by this Court in *Boumediene* because he was "part of or supporting Taliban or al Qaeda forces." In particular, it contends that petitioner Sliti: (1) traveled as an al Qaeda recruit to Afghanistan, (Unclassified Opening at 11:21-25, 14:8-13), at the expense of known al Qaeda associates and on a false passport provided to him by the same; (2) attended a Tunisian guesthouse, (Unclassified Return, ¶ 33), run by known al Qaeda associates; (3) received military training at a nearby camp affiliated with al Qaeda; (4) was arrested by and escaped from Pakistani authorities while carrying a false passport and an address book bearing the names of certain radical extremists; and (5) lived for a sustained period of time at a mosque in Afghanistan, (Unclassified Return, ¶¶ 65-68), based on the personal permission of its benefactor, who was a known al Qaeda terrorist. In addition, the Government contends that petitioner Sliti was instrumental, along with others associated with the Tunisian guesthouse, in starting a terrorist organization with close ties to al Qaeda.

Petitioner Sliti, not surprisingly, disagrees with these various allegations. While he concedes to traveling to Afghanistan with the financial assistance of his cousin, he claims to have gone there to kick a long-standing drug habit and to find a wife. (Unclassified Opening at 8:23-25). As to the guesthouse visit, he claims that it was very brief, and that he did not get along with the other residents of the guesthouse. Furthermore, he denies attending any military training camp, (Pet. Decl. at 7), and denies having an address book on him when he was first detained by Pakistani authorities. As for the mosque, he admits living there, (Pet. Decl. at 6-7), with the blessing of its principal benefactor, but he denies his being there was anything more than a place to live when he was otherwise homeless. Finally, he denies any involvement with, let alone any role in the founding of, a terrorist organization. (Pet. Decl. at 7.) For the following reasons, the Court has concluded that the Government has met its burden under the CMO and will DENY Sliti's petition for a writ of habeas corpus.

The Government's evidence is a combination of certain statements by petitioner Sliti which the Court found credible and certain supporting classified documents that elaborate in greater detail the most likely explanation for, and significance of, petitioner's conduct. Due to the unclassified nature of this proceeding, however, the Court is limited to the following description of the factual basis of the Government's case.

First, with regard to petitioner Sliti's travel to Afghanistan, the Government has more than adequately established that petitioner Sliti not only traveled there with both a false passport and as a result of considerable financial support provided to him by certain

extremists with well-established ties to al Qaeda, but that he also spent time at different stages of his trip with individuals closely associated with al Qaeda. When combined with the other evidence proven by the Government, it is a reasonable inference that petitioner Sliti was traveling to Afghanistan as an al Qaeda recruit.

From Pakistan, Sliti traveled to a Tunisian guesthouse in Jalalabad, Afghanistan, where he stayed free of charge. That guesthouse was frequented by individuals with close ties to terrorist organizations, including a senior al Qaeda operative. These individuals, like the ones who funded and facilitated Sliti's trip to Afghanistan, had an established track record of sending recruits to local terrorist training camps. While there is disagreement as to how long he lived at the guesthouse, there is no doubt that at some point later he started living in a local mosque. He acknowledged that he had to receive permission from the principal benefactor of the mosque in order to live there. It turns out that that benefactor is a convicted terrorist who also has well-established al Qaeda connections. Mr. Sliti, by his own admission, knew where the local military camp was located, what it looked like, and what code words were used by those attending it. Based on these facts, it is a fair and reasonable inference that petitioner Sliti, more likely than not, attended the local military training camp while living in Jalalabad.

Finally, with respect to the Government's contention that petitioner Sliti, together with other extremists living at the Tunisian guesthouse, was instrumental in founding a designated terrorist organization, while it is not clear what role, if any, petitioner Sliti had in its founding, there is little doubt that he had ties with many of those in the guesthouse

who the Government established were members of this terrorist group. It is therefore not surprising that the address book found on Mr. Sliti by Pakistani authorities contained the names and contact information of certain radical extremists. It is even less surprising that after being caught with that book and a false passport, he took the necessary steps to escape from Pakistani custody.

In light of all of these facts, the Court concludes that the Government has established by a preponderance of the evidence that it is more probable than not that petitioner traveled to Afghanistan as an al Qaeda recruit and trained at the local military training camp proximate to the Tunisian guesthouse in Jalalabad. Because petitioner Sliti remained in Afghanistan until late 2001, his conduct in support of al Qaeda not only preceded, but also succeeded, the initiation of U.S. force in October 2001. Stated simply, petitioner's story about traveling to Afghanistan to kick a long-standing drug habit and find a wife is not credible.

Thus, based on the evidence presented by the Government and all reasonable inferences drawn therefrom, the Court concludes that petitioner Sliti is being lawfully detained as an enemy combatant because it is more probable than not that he was "part of or supporting Taliban and al Qaeda forces" both prior to and after the initiation of U.S. hostilities in October 2001. Accordingly, this Court must, and will, DENY petitioner Sliti's petition for a writ of habeas corpus and will *not* order his release.

## CONCLUSION

For all the foregoing reasons, and for the reasons in the forthcoming classified version of this opinion, it is hereby

**ORDERED** that Petitioner Hisham Sliti's petition for writ of habeas corpus is **DENIED**.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge