UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMED EL GHARANI, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Case No. 05-429 (RJL) |
| | ) |
| GEORGE W. BUSH, *et al.*, | ) |
| | ) |
| Respondents. | ) |

## MEMORANDUM ORDER
(January _14_, 2009)

Petitioner Mohammed el Gharani ("petitioner" or "el Gharani") is a detainee being held at the U.S. Naval Base at Guantanamo Bay, Cuba. He alleges that he is being unlawfully detained by Respondents President George W. Bush, Secretary of Defense Robert M. Gates,[1] Army Brigade General Jay Hood, and Army Colonel Nelson J. Cannon (collectively "respondents" or the "Government"). On December 17, 2008, the Court commenced habeas corpus hearings for petitioner el Gharani. That morning, counsel for both parties made unclassified opening statements in a public hearing. Petitioner el Gharani listened to the opening statements via a live telephone transmission to Guantanamo Bay, Cuba.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to an action in his official capacity ceases to hold office, the court will automatically substitute that officer's successor. Accordingly, the Court substitutes Robert M. Gates for Donald H. Rumsfeld.

Thereafter, the Court went into a closed door session to hear each side present opening statements that included relevant classified information. Upon completion of those statements, each side presented its evidence and arguments regarding various material issues of fact in dispute between the parties. That presentation was completed in the early evening of December 17, 2008, and petitioner el Gharani decided thereafter not to testify on his own behalf. The next morning, the Court reconvened to hear the closing arguments of the parties. At the end of those arguments, the Court informed the parties that it would hold a public hearing to announce its decision. A classified version of this opinion setting forth in greater detail the Court's reasoning will be distributed through the Court Security Office next week, together with the final judgment.

Before stating the Court's ruling, a brief statement of the relevant factual and procedural history is appropriate.

## BACKGROUND

Petitioner el Gharani, a citizen of Chad and a native of Saudi Arabia, left Saudi Arabia sometime in or around 2001. (Unclassified Factual Narrative ("Narrative"), ¶ 1; Pet. Decl. at 5-6.) Petitioner alleges that he traveled to Pakistan to study and improve his life, and remained there until his arrest in 2001. (Pet. Decl. at 1, 6.) Respondents, to the contrary, allege petitioner arrived in Afghanistan at some unspecified time in 2001, where, among other activities in support of al Qaeda, he fought against U.S. forces at Tora Bora. (Narrative, ¶ 1.) Ultimately, the Government contends, Pakistani authorities picked petitioner up while he was fleeing from Afghanistan to Pakistan shortly after the

battle of Tora Bora. The Pakistani government turned him over to the United States in early 2002, (Narrative, ¶ 15), and he was transferred to Guantanamo Bay, Cuba, where he has remained since his arrival.

In the aftermath of the Supreme Court's decision in *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (holding that 28 U.S.C. § 2241 extended statutory habeas jurisdiction to Guantanamo), petitioner el Gharani filed his habeas corpus petition with the Court on March 2, 2005. (Pet. for Writs of Habeas Corpus [Dkt. #1].) As with the hundreds of other petitions filed around that time, no action was taken by the Court on that petition until the Supreme Court finally ruled on June 12, 2008 in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), that Guantanamo detainees are "entitled to the privilege of habeas corpus to challenge the legality of their detention." *Id.* at 2262.

In the month that followed the *Boumediene* decision, this Court met with counsel in el Gharani's case on two occasions to discuss issues unique to his case and procedural issues attendant to the habeas process. On July 30, 2008, this Court ordered the respondents to file their Factual Return for petitioner el Gharani by September 23, 2008. (Briefing and Scheduling Order, July 30, 2008 [Dkt. #88].) On September 9, 2008, respondents sought a thirty-day stay extension for the production of the Factual Return in this case. (Mot. for Partial Relief [Dkt. #114].) The Court granted respondents' motion on September 23, 2008 and set October 21, 2008 as the new due date for the Factual Return. (Order, Sept. 23, 2008 [Dkt. #116].) Respondents complied with that order.

On October 24, 2008, the Court met with counsel in chambers to discuss any issues raised after reviewing the Factual Return. On October 31, 2008, the Court issued its Case Management Order ("CMO") for the case. (CMO [Dkt. #135].) That order was essentially identical to the earlier CMO issued by the Court in *Boumediene v. Bush*, No. 04-cv-1166, on August 27, 2008.

On November 6, 2008, the Government filed an unclassified version of its Factual Return. (Notice of Filing of Unclassified Return [Dkt. #144].) Approximately three weeks later, on November 25, 2008, petitioner's counsel filed a motion for leave to take discovery, making sixty-two separate requests for admissions and documents. (Notice of Filing of Motion for Leave to Take Discovery [Dkt. #149].) The Court held a discovery hearing on December 1, 2008 and granted some of petitioner's requests.

On December 5, 2008, petitioner el Gharani filed his initial Traverse setting forth the factual basis for his opposition to the Government's return. (Notice of Filing of Petitioner's Preliminary Traverse [Dkt. #168].) Seven days later, petitioner el Gharani supplemented his Traverse. (Notice of Filing of Petitioners' Traverse Supplements [Dkt. #177].) That same day, the Court held a pre-hearing conference with counsel to identify the material issues of fact in dispute between the parties and to discuss any legal or procedural issues that needed to be resolved before the habeas hearing commenced. On December 16, 2008, petitioner filed a second supplement to his Traverse.

Based on a careful review of the Factual Return and the Traverse, and after a day and a half of hearings on the factual issues in dispute and the oral arguments of the

4

parties, the following is the Court's ruling on petitioner el Gharani's petition.

## LEGAL STANDARD

Under the CMO, the Government bears the burden of proving, "by a preponderance of the evidence, the lawfulness of the petitioner's detention." (CMO, ¶ II.A.) The Government argues that petitioner is lawfully detained because he is an "enemy combatant," who can be held pursuant to the Authorization for Use of Military Force and the President's powers as Commander in Chief.[2] (Notice of Filing of Statement of the Legal Bases for Lawful Detention as an Enemy Combatant [Dkt. #166].) The following definition of "enemy combatant," previously adopted by this Court in the *Boumediene* cases, governs the proceedings in this case:

> An "enemy combatant" is an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces.

*Boumediene v. Bush*, 2008 WL 4722127, at *2 (D.D.C. Oct. 27, 2008). Accordingly, the question before this Court is whether the Government has shown by a preponderance of

---

[2] In response to the September 11th terrorist attacks, Congress passed a joint resolution authorizing the President to:

> [U]se all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons.

Authorization for Use of Military Force, Pub. L. No. 107-40, §§ 1-2, 115 Stat. 224 (Sept. 18, 2001).

5

the evidence that petitioner el Gharani is being lawfully detained—*i.e.*, that he is an "enemy combatant" under the definition adopted by this Court.

## ANALYSIS

The Government contends that petitioner el Gharani is an enemy combatant under the definition adopted by this Court in *Boumediene* because he was "part of or supporting Taliban or al Qaeda forces." *Boumediene*, 2008 WL 4722127, at *2. In particular, respondents contend that petitioner el Gharani: (1) stayed at an al Qaeda-affiliated guesthouse in Afghanistan; (2) received military training at an al Qaeda-affiliated military training camp, (Narrative, ¶ 1); (3) served as a courier for several high-ranking al Qaeda members; (4) fought against U.S. and allied forces at the battle of Tora Bora, (Narrative, ¶ 1); and (5) was a member of an al Qaeda cell based in London.

Petitioner strongly disagrees. He claims to have traveled to Pakistan from Saudi Arabia at the age of 14 to escape discrimination against Chadians in that country, acquire computer and English skills, and make a better life for himself. (Unclassified Opening at 10:22-25; Pet. Decl. at 1-2, 16-17.) He denies going to Afghanistan at all, let alone staying in an al Qaeda guesthouse and receiving military training at an al Qaeda-affiliated camp. (Pet. Decl. at 1.) He denies being at the battle of Tora Bora and he denies ever being a member of an al Qaeda cell based in London. (Pet. Decl. at 2, 16.)

Unlike most of the other cases reviewed to date by this Court, the Government's evidence against el Gharani consists principally of the statements made by two other detainees while incarcerated at Guantanamo Bay. Indeed, these statements are either

6

exclusively, or jointly, the *only* evidence offered by the Government to substantiate the majority of their allegations. In addition, unlike the other cases reviewed by this Court to date, the credibility and reliability of the detainees being relied upon by the Government has either been directly called into question by Government personnel or has been characterized by Government personnel as undetermined.

For the following reasons, the Court concludes that the Government was unable to meet its burden of establishing by a preponderance of the evidence that petitioner el Gharani was a part of or supporting al Qaeda or Taliban forces in the period preceding his arrest by Pakistani authorities in 2001 because it was unable to either sufficiently establish the reliability of its detainee witnesses, or produce sufficient other reliable evidence to corroborate them. Therefore, the Court will GRANT el Gharani's petition for a writ of habeas corpus.

The Government's evidence is a mosaic of allegations made up of statements by the petitioner, statements by several of his fellow detainees, and certain classified documents that allegedly establish in greater detail the most likely explanation for, and significance of, petitioner's conduct. Due to the unclassified nature of this proceeding, however, the Court is limited to the following description of the factual basis of the Government's case.

First, with respect to the allegation that the petitioner traveled to Afghanistan and attended an al Qaeda-affiliated guesthouse, the Government relies exclusively on the statements of a particular Guantanamo detainee whose reliability had been characterized

by the Government's own interrogators as undetermined. Unfortunately for the Government, his account of petitioner's attendance at particular guesthouses is plagued with internal inconsistencies. In the absence of corroborating evidence, and/or a more substantial basis to assess this detainee's reliability either in general or as to these particular allegations, the Court, applying *Parhat v. Gates*, 532 F.3d 834, 847 (D.C. Cir. 2008), can not rely on this detainee's statements as to this allegation.

Similarly, with respect to the allegation of petitioner's participation in the battle of Tora Bora, the Government relies *exclusively* on a different detainee to establish this fact. The credibility of this other detainee, however, has been seriously called into question by Government personnel who have specifically cautioned against relying on his statements without independent corroboration. The Government, however, did not produce any such corroboration. Because participation in a battle against U.S. and allied forces would be such strong evidence of enemy combatancy, it is particularly important that the Court satisfy itself of the reliability of this evidence. Thus, in the absence of independent corroboration from a reliable source, this Court can not rely on this detainee's statements to establish this allegation.

With respect to the allegation that petitioner el Gharani attended an al Qaeda-affiliated training camp, the Government, I suspect, believes they have provided just such corroborating evidence. In support of that allegation, the Government pointed to statements of *both* of the detainees described above that allegedly place the petitioner at this particular military camp. Unfortunately, however, the detainees' stories, when

viewed together, are not factually compatible, each placing the petitioner at the camp at different points in time, multiple months apart, during the year 2001. Again, because attendance at this military training camp would be very strong evidence of enemy combatancy, the Court needs either independent corroboration or a further basis to rely on the accuracy of these two conflicting statements in order to satisfy itself of the reliability of their allegation. Based on the internal inconsistencies in their accounts and the lack of independent corroboration, the Court is not able to do so, and, accordingly, will not accredit this allegation.

Next, the Government contends that petitioner el Gharani was a courier for certain senior al Qaeda operatives. Once again, this allegation, if proven, would be strong evidence of enemy combatancy. Unfortunately for the Government, however, the classified information it relies upon – which did *not* include statements of any other detainees – was woefully deficient to establish this point by a preponderance of the evidence. Besides having internal inconsistencies, the Government's evidence *raises* serious questions about whether certain alleged al Qaeda correspondence was even on the person of the petitioner as opposed to one of eight other individuals who were turned over to U.S. authorities at Kandahar at the same time as petitioner. Accordingly, this allegation is also not established.

Finally,[3] with respect to the allegation that petitioner el Gharani was a member of

---

[3] The Government also contends that the petitioner was a point of contact for known and suspected terrorists because his name and a Saudi Arabian phone number were found in the possession of four other detainees at the time of their transfer into U.S. custody. In addition, his

9

an al Qaeda cell based in London, once again the Government is relying *exclusively* on the statements of the detainee whose reliability is described above as being undetermined. Putting aside the obvious and unanswered questions as to how a Saudi minor from a very poor family could have even become a member of a London-based cell, the Government simply advances no corroborating evidence for these statements it believes to be reliable from a fellow detainee, the basis of whose knowledge is – at best – unknown. Again, because membership in an al Qaeda cell – if proven – would be strong evidence of enemy combatancy under the Court's definition, the Government needed to advance some corroborating evidence to support such a bald and serious allegation from a source whose reliability is in question.

Thus, notwithstanding the substantial and troubling uncertainties regarding petitioner's conduct and whereabouts prior to his detention by Pakistani forces, the Government has failed to establish by a preponderance of the evidence that petitioner el Gharani was "part of or supporting" al Qaeda or the Taliban prior to or after the initiation of force by the U.S. in 2001. Simply stated, a mosaic of tiles bearing images this murky reveals nothing about the petitioner with sufficient clarity, either individually or collectively, that can be relied upon by this Court. Accordingly, the Court must, and will,

---

name and the telephone number of a family member in Saudi Arabia appeared among a list of prisoners found on a personal computer seized from the safehouse of a particular senior al Qaeda operative. However, because the other detainees were in the same prison as the petitioner in Pakistan, and he had allegedly provided his name and contact information for his family to the other prisoners through a prison guard so that his family could know where he was being held, petitioner's explanation is sufficiently plausible that the Government needed to provide more evidence than it produced to meet the minimum necessary threshold to establish this serious allegation.

10

GRANT the detainee's petition for a writ of habeas corpus and order the respondents to take all necessary and appropriate diplomatic steps to facilitate his release forthwith.

## CONCLUSION

For all the foregoing reasons, and for the reasons in the forthcoming classified version of this opinion, it is hereby

**ORDERED** that petitioner Mohammed el Gharani's petition for writ of habeas corpus is **GRANTED**. It is further

**ORDERED** that respondents are directed to take all necessary and appropriate diplomatic steps to facilitate the release of petitioner el Gharani forthwith.

**SO ORDERED.**

_____
RICHARD J. LEON
United States District Judge