# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **HEDI HAMMAMY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **Civil Case No.  05-429 (RJL)** |
| | ) | |
| **BARACK H. OBAMA,**[1] ***et al.*,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM ORDER
(April **2** , 2009)

Petitioner Hedi Hammamy ("petitioner" or "Hammamy") is a detainee being held

at the U.S. Naval Base at Guantanamo Bay, Cuba.  He alleges that he is being unlawfully

detained by Respondents President Barack H. Obama, Secretary of Defense Robert M.

Gates, Army Brigade General Jay Hood, and Army Colonel Nelson J. Cannon

(collectively, "respondents" or the "Government").  On March 12, 2009, this Court

commenced habeas corpus proceedings for petitioner Hammamy.  That morning, counsel

for both parties made unclassified opening statements in a public hearing.  Petitioner

Hammamy listened to a live translation of the opening statements via a telephone

transmission to Guantanamo Bay, Cuba.

---

[1]      Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to an action in his official capacity ceases to hold office, the court will automatically substitute that officer's successor.  Accordingly, the Court substitutes Barack H. Obama for George W. Bush and Robert M. Gates for Donald H. Rumsfeld.

Thereafter, the Court went into a closed-door session to hear each side present an opening statement that included relevant classified information. Upon completion of those statements, each side presented its evidence and arguments regarding various material issues of fact in dispute by the parties. That presentation was completed in the early evening of March 12, 2009, and petitioner Hammamy decided thereafter not to testify on his own behalf. After a brief recess, the Court heard closing arguments from the parties. At the end of those arguments, the Court informed the parties that it would hold a public hearing in the near future to announce its decision. A classified version of this opinion setting forth in greater detail the Court's reasoning will be distributed through the Court Security Office next week, together with the final judgment.

Before stating the Court's ruling, a brief statement of the relevant factual and procedural background of this case is appropriate.

## BACKGROUND

Petitioner Hammamy, a Tunisian citizen, was arrested in April 2002 in Pakistan by Pakistani authorities, transferred to United States custody, and has been detained in Guantanamo Bay, Cuba since his arrival. (Unclassified Hr'g Tr. at 9, 18.)

In the aftermath of the Supreme Court's decision in *Rasul v. Bush*, 542 U.S. 466, 473 (2000) (holding that 28 U.S.C. § 2241 extended statutory habeas corpus jurisdiction to Guantanamo), petitioner Hammamy filed his habeas corpus petition with this Court on March 2, 2005. (Pet. for Writs of Habeas Corpus [Dkt. #1].) As with hundreds of other petitions filed around that time, no action was taken by this Court on the petition until the

2

Supreme Court ruled on June 12, 2008 in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008),

that Guantanamo detainees are "entitled to the privilege of habeas corpus to challenge the

legality of their detentions." *Id.* at 2262.

In the month following the *Boumediene* decision, this Court met with counsel in

petitioner Hammamy's case on a number of occasions to discuss issues unique to the case

and procedural issues attendant to the habeas process. On July 30, 2008, the Court

ordered respondents to file their Factual Return for petitioner Hammamy. (Briefing and

Scheduling Order, July 30, 2008 [Dkt. #88].) On September 9, 2008, respondents sought

a thirty-day extension for the production of the Hammamy Factual Return. (Mot. for

Partial Relief, Sept. 9, 2008 [Dkt. #114].) The Court granted respondents' motion on

September 23, 2008 and set October 21, 2008 as the date for the filing of the Factual

Return. (Order, Sept. 23, 2008 [Dkt. #116].)

On October 24, 2008, the Court met with counsel to discuss any issues raised after

reviewing respondents' Factual Return. On November 28, 2008, the Court issued its

Case Management Order ("CMO") for the case. (Case Management Order, Nov. 28,

2008 [Dkt. #154].) That order was essentially a duplicate of the earlier CMO issued by

the Court in the *Boumediene v. Bush* case, No. 04-cv-1166, on August 27, 2008.

On December 3, 2008, the Government filed an unclassified version of the Factual

Return. (Notice of Filing of Unclassified Return, Dec. 3, 2008 [Dkt. #163].)

Approximately two weeks later, on December 14, 2008, petitioner Hammamy's counsel

3

filed a motion for leave to take discovery. (Notice of Filing of Mots. for Leave to Take Discovery, Dec. 16, 2008 [Dkt. #176].) The Court granted some of these requests.

On December 22, 2008, petitioner Hammamy's counsel filed his Initial Traverse, setting forth the factual basis for his opposition to the Government's Factual Return. (Notice of Filing, Jan. 11, 2009 [Dkt. #200].) Nine days later, respondents filed an unopposed motion to stay the proceedings for sixty days in order to give the Government an opportunity to transfer petitioner to an acceptable country. (Motion to Stay Habeas Proceeding of Pet. Hammamy, Dec. 31, 2008 [Dkt. #191].) The Court granted the stay on January 6, 2009. (Minute Order, Jan. 6, 2009.) Ten days later, the Government moved to supplement its Return. (Notice of Filing of Mot. Under Seal, Jan. 16, 2009 [Dkt. #204].) The Court granted its motion on February 18, 2009. (Order, Feb. 18, 2009 [Dkt. #212].) On March 1, 2009, petitioner filed a motion to extend the stay. (Notice of Filing of Unopposed Mot. to Stay, Mar. 1, 2009 [Dkt. #213].) Although the Government did not oppose the motion, the Court denied the extension for lack of good cause shown. (Minute Order, Mar. 6, 2009.) Petitioner supplemented his Traverse on two occasions, (Notice of Filing of Pet. Hedi Hammamy's First Supplement to Preliminary Traverse, Jan. 28, 2009 [Dkt. #207]; Notice of Filing of Second Supp. to Traverse, Mar. 3, 2009 [Dkt. #214]), and a prehearing conference was held on March 10, 2009 in an effort to narrow the issues to be covered in the habeas hearing.

Based on a careful review of the Factual Return and Traverse and after a day of hearings on the factual issues in dispute and the arguments of counsel, the following is the Court's ruling on Hammamy's petition.

## LEGAL STANDARD

Under the CMO, the Government bears the burden of proving the lawfulness of the petitioner's detention by a preponderance of the evidence. (CMO ¶ II.A.) The Government argues that petitioner Hammamy is lawfully detained because he is an "enemy combatant" who can be held pursuant to the Authorization for Use of Military Force and the President's powers as Commander-in-Chief.[2] (Notice of Filing of Enemy Combatant Statement, Dec. 22, 2008 [Dkt. #182].) The following definition of "enemy combatant," previously adopted by this Court in the *Boumediene* cases, governs the proceedings in this case:

> An "enemy combatant" is an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces.

---

[2]      In response to the September 11th terrorist attacks, Congress passed a joint resolution authorizing the President to:

> [U]se all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons.

Authorization for Use of Military Force, Pub. L. No. 107-40, §§ 1-2, 115 Stat. 224 (Sept. 18, 2001).

*Boumediene v. Bush*, 2008 WL 4722127, at *2 (D.D.C. Oct. 27, 2008). Accordingly, the question before this Court is whether the Government has shown by a preponderance of the evidence that petitioner Hammamy is being lawfully detained, *i.e.*, that he is an "enemy combatant" under the definition adopted by this Court.

## ANALYSIS

The Government contends that petitioner Hammamy is an enemy combatant under the definition established by this Court because he was "part of or supporting al Qaeda or Taliban forces." In particular, the Government contends that petitioner Hammamy: (1) fought with Taliban or al Qaeda forces against U.S. and Afghan forces during the battle of Tora Bora, and (2) was a member of an Italy-based terrorist cell that provided support to various Islamic terrorist groups. (Unclassified Opening at 18, 21, 22.) In that regard, the Government alleges that Hammamy left Italy, in part, to avoid being arrested by Italian authorities for his involvement in this particular terrorist cell. (Unclassified Opening at 21.) The Government additionally contends that petitioner Hammamy attended a terrorist training camp in Afghanistan and was involved in an organization in Pakistan, (Unclassified Opening at 22, 23), the identity of which is too secret for an unclassified description.

Petitioner, not surprisingly, disagrees. He contends that he did not fight in the battle of Tora Bora, and he was never a member of a terrorist cell in Italy. (Unclassified Opening at 11-12, 14.) Additionally, he denies ever attending military training camps in Afghanistan or being part of any organization in Pakistan that has engaged in terrorist

conduct. (Unclassified Opening at 12, 16.) For the following reasons, the Court concludes that the Government has met its burden under the Case Management Order and will DENY petitioner Hammamy's petition for a writ of habeas corpus.

The Government's evidence principally consists of intelligence reports from various government law enforcement and intelligence services. Due to the unclassified nature of this proceeding, however, the Court is limited to the following description of the factual basis of the Government's case.

First, with respect to the Government's contention that petitioner fought at the battle of Tora Bora, it relies upon an intelligence report that petitioner's identity papers were found after the Battle of Tora Bora in the al Qaeda cave complex. Although the petitioner belittles the evidentiary value of this report standing alone, the Government's evidence cannot be viewed in a vacuum. Indeed, when combined with the intelligence report describing an extensive Italian law enforcement investigation into Hammamy's membership in, and the activities of, a terrorist cell that provided assistance and support to various Islamic terrorist organizations, the intelligence report of Hammamy's presence at Tora Bora becomes all the more probable. How so?

The presence of petitioner's identity papers in the Taliban/al Qaeda stronghold of Tora Bora is, of course, powerful evidence itself that Hammamy was actually there. While it may not be as inherently definitive as DNA, fingerprints, or a photograph of his presence, it does nonetheless provide a direct link between the petitioner and Taliban or al Qaeda forces. Hammamy's contention that his identity papers were stolen from him

7

shortly after his arrival in Pakistan rings hollow at best. Aside from its convenience under the circumstances, petitioner's story provides no basis to account for how his identity papers somehow mysteriously traveled the hundreds of miles from the point of their theft in Pakistan to the highly secluded mountain hideaway of Tora Bora in Afghanistan. While theoretically it is *possible* that this supposed thief was heading for Tora Bora himself, common sense dictates that such a conclusion is not in the least bit likely.

In any event, the Government, wisely, chose not to rely alone on that link between Hammamy and Tora Bora, instead contending that this evidence must be viewed in conjunction with Hammamy's conduct in Italy just prior to his arrival in Afghanistan and Pakistan. As noted previously, petitioner's conduct in Italy was the subject of a lengthy investigation by Italian law enforcement authorities and was sufficient to warrant charging Hammamy and several associates with supporting terrorism, in part, by furnishing false documents and currency. Unfortunately for the Italian authorities, Hammamy left Italy in time to avoid being arrested along with other members of the cell. And while a judicial finding from a foreign government of Hammamy's involvement in that terrorist cell would be clearly preferable to a U.S. government agency's review and evaluation of that government's investigative reports, in the absence of any reason to question its accuracy, the report deserves, at a minimum, a rebuttable presumption of reliability for these limited purposes. Indeed, combining the Tora Bora evidence with the law enforcement reports, the Court believes it unnecessary to rely upon the Government's

8

other evidence, *i.e.*, alleging attendance at terrorist training camps and membership in a Pakistani organization that engaged in terrorist conduct. As a result, the Court need not – and will not – evaluate the credibility and reliability of the sources of that additional evidence.

Thus, based on the evidence presented by the Government described above and all reasonable inferences drawn therefrom, the Court concludes that petitioner Hammamy is being lawfully detained as an enemy combatant because it is more probable than not that he was part of or supporting Taliban or al Qaeda forces both prior to and after the initiation of U.S. hostilities in October 2001. Accordingly, the Court must, and will, DENY petitioner Hammamy's petition for a writ of habeas corpus and will *not* order his release.

## CONCLUSION

For all the foregoing reasons, and for the reasons in the forthcoming classified version of this opinion, it is hereby

**ORDERED** that petitioner Hedi Hammamy's petition for writ of habeas corpus is **DENIED**.

**SO ORDERED**.

RICHARD J. LEON
United States District Judge